# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON GRISBY, | ) |
| Plaintiff, | ) Civil Action No. 15 – 176J |
| | ) |
| v. | ) District Judge Kim R. Gibson |
| | ) Magistrate Judge Lisa Pupo Lenihan |
| ROBERT BAKOS, *Security Lieutenant*, | ) |
| | ) ECF No. 24 |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the following reasons, it is respectfully recommended that the Court grant the Motion for Summary Judgment (ECF No. 24) filed by Defendant Robert Bakos.

### II. REPORT

#### A. Procedural Background

Plaintiff Jason Grisby, an inmate at the State Correctional Institution Forest, initiated the instant prisoner civil rights action on June 21, 2015,[1] pursuant to 42 U.S.C. § 1983. His Complaint was docketed on June 22, 2015 (ECF No. 6) and Defendant Robert Bakos responded by filing an Answer that was docketed on October 5, 2015 (ECF No. 14). Thereafter, discovery

---

[1] This is the filing date under the "mailbox rule." Pennsylvania and federal courts employ the prisoner mailbox rule. *See* Perry v. Diguglielmo, 169 Fed. Appx. 134, 136 n.3 (3d Cir. 2006) (citing Commonwealth v. Little, 716 A.2d 1287 (Pa. Super. Ct. 1998)); Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998). Under this doctrine, a prisoner's *pro se* pleading is deemed filed when delivered to prison officials for mailing. *See* Burns, 134 F.3d at 113; Commonwealth v. Castro, 766 A.2d 1283, 1287 (Pa. Super. Ct. 2001) (deemed filed when given to proper prison authority or placed in a prison mailbox).

was conducted and Defendant filed a Motion for Summary Judgment on February 19, 2016. (ECF No. 24.) Plaintiff responded in opposition to the Motion on June 14, 2016. (ECF No. 43.) The Motion is now ripe for review.

### B. **Factual Background**[2]

While confined at SCI-Somerset, Plaintiff wrote a letter to Pennsylvania Department of Corrections Secretary John Wetzel dated September 18, 2013. (Def.'s Ex. 1; Ex. 2, ¶ 1.)[3] In that letter, Plaintiff alleged that he had witnessed corrections officers punch, stomp and kick other inmates while they were cuffed and on the ground in the SCI-Somerset Restricted Housing Unit ("RHU"), where he was housed. (Def.'s Ex. 1.). He gave a few examples, one of which was that CO Sossong had put pieces of razors in Inmate McCullough's food tray, although he meant to place them in Inmate Clinton's food tray. Id. Plaintiff also wrote that various non-defendant corrections officers had retaliated against him for reporting this alleged abuse by depriving him of showers and exercise yard time. Id. Plaintiff further wrote that CO Lavan slammed Inmate

---

[2] After the filing of Defendant's Motion for Summary Judgment, Plaintiff was instructed to file a response in opposition to the motion which included a Concise Counter Statement of Facts to Defendant's Concise Statement of Undisputed Material Facts. He was further instructed that all of Defendant's claims would be deemed admitted if he did not specifically deny or otherwise controvert them by a separate concise statement. See ECF No. 28. While Plaintiff filed a Response in Opposition to the Motion for Summary Judgment, he did not in any way specifically deny the claims in Defendant's Concise Statement of Undisputed Material Facts. Therefore, pursuant to Local Rule 56.E and for purposes of deciding this Motion, these claims will be deemed admitted.

At this time, the undersigned notes that in Plaintiff's response to the Motion for Summary Judgment (ECF No. 43) he complains that he could not sufficiently oppose the Motion because the Court did not grant his discovery requests. The docket shows that Plaintiff filed two motions to compel discovery (ECF Nos. 31, 36) to which Defendant filed responses. Those motions were denied for various reasons (ECF Nos. 33, 40) which are detailed on the docket. In addition to those reasons, it appears that most of Plaintiff's requests were irrelevant to the issue before the Court and would not have made a difference in the outcome of this case.

[3] Defendant's Exhibits are found in docket ECF No. 27 and will be cited to herein by their Exhibit number.

Clinton's face off of a cell door and threw him to the ground. Id. Plaintiff finally wrote that officers of various ranks were covering up the actions of the offending corrections officers. Id.

As a result of Plaintiff's letter to Secretary Wetzel, the DOC's Office of Special Investigations and Intelligence ("OSII") opened an investigation, which was conducted by Defendant Bakos, the Security Lieutenant at SCI-Somerset. (Def.'s Ex. 2, ¶ 3; Ex. 3.) Defendant Bakos took staff statements from several staff members, including Lieutenant Shaffer and Corrections Officers Sossong, Streczywilk, Lavan and Weaver. (Def.'s Ex. 2, ¶ 3; Ex. 3, pp.4, 25-38.) All staff members disputed Plaintiff's allegations. (Def.'s Ex. 2, ¶ 3; Ex. 3, pp.1, 25-38.). Plaintiff refused to cooperate with the investigation, stating that he only wrote the letter to waste Defendant Bakos' time. (Def.'s Ex. 2, ¶ 3; Ex. 3, pp.1, 23.) Plaintiff refused to comment any further and merely stood at his door smiling at Defendant Bakos. (Def.'s Ex. 3, p.23.)

In addition, Inmate McCullough, who wrote a grievance about the razor allegation, refused to cooperate with the investigation. (Def.'s Ex. 2, ¶ 3, Ex. 3, pp.1, 23.) Inmate McCullough's grievance was also denied as frivolous by Major Hainsworth because he himself was found to be in possession of broken razor blades, he did not witness any razor blades being put into his food, and meal trays are passed out randomly, making it impossible for an officer to try to single out a particular inmate by putting razor blades in his food. (Def.'s Ex. 3, p.15.) In addition, an earlier, unrelated OSII investigation conducted by Lieutenant Timothy Boyce had already found the allegation concerning Inmate Clinton to be unfounded. (Def.'s Ex. 2, ¶ 3; Ex. 4, pp.1-2 and generally.) At the conclusion of the investigation, Defendant Bakos found that there was no evidence to substantiate Plaintiff's claims of abuse and that it was more likely than not that Plaintiff fabricated his claims of abuse. (Def.'s Ex. 2, ¶ 4; Ex. 3, p.2.) As a result,

Defendant Bakos issued Plaintiff Misconduct B656750 on January 29, 2014. (Def.'s Ex. 5, p.1.) Defendant Bakos charged Plaintiff with any violation (criminal) of the Pennsylvania Crimes Code (Unsworn Falsification to Authorities) and lying to an employee. (Def.'s Ex. 5, p.1.) The Hearing Examiner found Plaintiff guilty of lying to an employee and sentenced him to 90 days of disciplinary custody in the RHU. (Def.'s Ex. 5, p.4.) The finding of guilt was upheld through appeal. (Def.'s Ex. 5, pp.6, 8-9.)

Later, Plaintiff was sent to the Special Management Unit ("SMU"). (Def.'s Ex. 2, ¶ 5.) In order for an inmate to be sent to the SMU, a vote must be taken and Defendant Bakos was not involved in the decision to send Plaintiff to the SMU. (Def.'s Ex. 2, ¶ 5.) The decision to send Plaintiff to the SMU was based on a pattern of misconducts and bad behavior. (Def's Ex. 2, ¶ 5; Ex. 7, p.4.) As of June 19, 2015, Plaintiff had incurred 40 misconducts while in DOC custody, ranging from assault to threatening an employee to lying to an employee and others. (Def.'s Ex. 6.) The majority (28) of these misconducts occurred prior to the issuance of Misconduct B656750 on January 19, 2014. (Def.'s Ex. 6; Ex. 7, p.5.) Plaintiff was issued an "Other" Report B638458 when he was approved for SMU placement. (Def.'s Ex. 7.) Plaintiff appealed the decision to approve him for SUM placement. (Def.'s Ex. 7, pp.2-3.) In his appeal, dated April 11, 2014, Plaintiff contended that he should not be placed in the SMU because he did not pose a threat to the facility or to other inmates or himself and because there had been wrongful acts by staff members. (Def.'s Ex. 7, pp.2-3.) In his appeal, Plaintiff did not mention Defendant Bakos or retaliation. (Def.'s Ex. 7, pp.2-3.)

Plaintiff filed Grievance 507790 on April 30, 2014 concerning matters related to his SMU placement. (Def.'s Ex. 8.) He contended that the procedures for placing him in the SMU

were faulty. (Def.'s Ex. 8, pp.1-2.) Nowhere in Grievance 507790 did Plaintiff mention Defendant Bakos or retaliation. (Def.'s Ex. 8.)

Plaintiff filed Grievance 507996 on May 4, 2014 regarding alleged problems with the "Other" Report. (Def.'s Ex. 9.) Nowhere in Grievance 507996 did Plaintiff mention Defendant Bakos or retaliation. (Def.'s Ex. 9.)

On January 1, 2014, before the OSII investigation was completed or he was issued Misconduct B656750 by Defendant Bakos, Plaintiff filed Grievance 491646. (Def.'s Ex. 10.) In this Grievance, Plaintiff complained that he was placed on restricted movement by Officer Lavan for threatening a corrections officer. (Def.'s Ex. 10, p.1.) Plaintiff complained that he was denied showers, law library, exercise and cell cleaning as a result. (Def.'s Ex. 10, p.1.) Nowhere in the Grievance did Plaintiff mention Defendant Bakos or retaliation. (Def.'s Ex. 10, pp.1-2, 4.)

On January 3, 2014, before the OSII investigation was completed or he was issued Misconduct B656750 by Defendant Bakos, Plaintiff filed Grievance 491893. (Def.'s Ex. 11.) In this Grievance, plaintiff complained about the alleged manner in which a strip search was conducted before he went to law library and the way in which cell searches allegedly occurred. (Def.'s Ex. 11, pp.1-2.) Nowhere in the Grievance did Plaintiff mention Defendant Bakos. (Def.'s Ex. 11, pp.1-2, 6-7, 9-10.) While he did mention retaliation, it was non-defendant officers who allegedly retaliated against him. (Def.'s Ex. 11, pp.1-2, 6-7, 9-10.) This Grievance was denied by Defendant Bakos who determined, following an investigation, that there was no evidence to substantiate Plaintiff's claim of abuse. (Def.'s Ex. 11, p.4.)

**C. Standard of Review**

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine issue of material fact. Nat'l State Bank v. Fed.l Reserve Bank of New York, 979 F.2d 1579, 1581-82 (3d Cir. 1992) (citing Celotex, 477 U.S. at 323-25). Once that burden has been met, the nonmoving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e) (1963). *See also* Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995) ("plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") (citing Celotex, *supra*).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* FED. R. CIV. P. 56(c)(2); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

**D. Discussion**

Plaintiff's claim is that Defendant Bakos issued him a false misconduct report (Misconduct B656750) in retaliation for "complaining to the Secretary of Corrections about the abuse that was taking place in the restricted housing unit at S.C.I.- Somerset."[4] (ECF No. 6, ¶18.) As a result of that Misconduct, Plaintiff's time in the RHU was extended, and while in the RHU, he was confined to his cell for 23 hours a day, deprived of most of his person property, restricted from attending education and vocational programs, could not work, and housed with inmates that had severe mental health issues. (ECF No. 6, ¶14.) He also alleges that he was the subject of harassment and frequently denied access to the law library and his one hour of outdoor exercise. (ECF No. 6, ¶14.) He further asserts that was subjected to "excessive and unreasonable" strip searches and cell searches. (ECF No. 6, ¶14.) Finally, Plaintiff states that the Misconduct was used in the decision to transfer him to the SMU, where he had to spend a minimum of six to nine months before being considered for release into the general population. (ECF No. 6, ¶15.)[5]

It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the Constitution, which is actionable under section 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir.

---

[4] The Third Circuit Court of Appeals has said that "falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment guarantee of access to the courts." Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (citing Millhouse v. Carlson, 652 F.2d 371, 374 (3d Cir. 1981).

[5] Defendant Bakos has addressed Plaintiff's claim as stating four different acts of retaliation: (1) the issuance of the falsified misconduct, (2) transfer to the SMU, (3) denial of access to the law library and outdoor exercise, and (4) excessive and unreasonable strip searches and cell searches. (ECF No. 25.) However, the Court more appropriately interprets Plaintiff's Complaint as asserting different adverse actions as a result of the issuance of the Misconduct. For example, in Plaintiff's Complaint, he states that he was subjected to these actions "As a result of t[he] misconduct report . . . ." (ECF No. 6, ¶¶14-16.) Therefore, the allegations will be addressed accordingly.

1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"[6] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.[7] Rauser, 241 F.3d at 333 (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). Once all three criteria are met, the burden then shifts to the defendants "to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity." Rauser, 241 F.3d at 333. This means that "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334 (incorporating Turner v. Safley, 482 U.S. 78, 89 (1987)).

A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim. *See* Millhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution); Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir. 1995) (prison officials may not retaliate against an inmate for complaining about a guard's misconduct). However, a plaintiff does not have a First Amendment right to provide false

---

[6] An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

[7] The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See* Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See* Lape v. Pennsylvania, 157 F. App'x. 491, 498 (3d Cir. 2005).

statements. Hadden v. Howard, 713 F.2d 1003, 1007 (3d Cir. 1983) (discussing at length that inmates have no right to lie about prison personnel in documents submitted through Pennsylvania's inmate complaint process); Hale v. Scott, 371 F.3d 917 (7th Cir. 2004) (collecting authorities confirming that inmates have no constitutional right to make false accusations about prison personnel).

First, Plaintiff must demonstrate that he engaged in constitutionally protected conduct to support his retaliation claim. This means that Plaintiff's statements in the letter to Secretary Wetzel must have been true. However, if the claims of abuse were not true then there is no constitutionally protected conduct at issue and Plaintiff's claim fails. While this determination is a question of fact, Plaintiff has presented no evidence, except his statements in his verified Complaint, that his allegations of abuse in the letter to Secretary Wetzel were true.[8]

On the other hand, the affidavit submitted in support of the summary judgment motion by Defendant Bakos avers that Plaintiff's claims of abuse were found to be unsubstantiated. The record reveals that an OSII investigation was conducted in response to Plaintiff's letter to

---

[8] The Third Circuit has indicated that a district court may treat a verified complaint as an affidavit in opposition to summary judgment. *See* Ziegler v. Eby, 77 F. App'x 117, 120 (3d Cir. 2003) ("[T]he complaint was not verified, thereby precluding the District Court from treating it as the equivalent of an affidavit for purposes of Federal Rule of Civil Procedure 56(e)."); Reese v. Sparks, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion); *see also* Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 682 (8th Cir.2012) ("a verified complaint is equivalent to an affidavit for summary judgment purposes"); ACLU of Ky. v. Grayson Cnty., 591 F.3d 837, 844 n. 2 (6th Cir.2010) (same); Moran v. Selig, 447 F.3d 748, 759 n. 16 (9th Cir.2006) ("a verified complaint may serve as an affidavit for purposes of summary judgment if it is based on personal knowledge and if it sets forth the requisite facts with specificity."); Lantec, Inc. v. Novell, Inc., 306 F.3d 1003, 1019 (10th Cir.2002) ("A district court may treat a verified complaint as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)."); Davis v. Carroll, No. 03–131, 2012 WL 2880542, at *3 n. 2 (D.Del. July 13, 2012) ("The Third Circuit has indicated that verified complaints may be treated as affidavits in opposition to summary judgment."); Boomer v. Lewis, No. 06-850, 2009 WL 2900778, at *2 n. 4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge.")

9

Secretary Wetzel. As part of that investigation, staff members were interviewed and all officers alleged to be involved denied the allegations. Importantly, Plaintiff himself refused to cooperate with the investigation telling Defendant Bakos, "I ain't writing shit and I ain't coming out to talk. This is all about wasting your time." (Def.'s Ex. 3.) Inmate McCullough, who Plaintiff alleged had pieces of razors placed in his food tray, also refused to cooperate with the investigation stating, "I didn't file no claim of abuse. I filed grievances on this. You ain't jamming me up. I got nothing to say" and "Are you hard head or what. I didn't file no claim and I ain't giving you no written statement to use against me." Id. Based on the fact that no evidence was found to support Plaintiff's claims and Plaintiff himself was unwilling to cooperate, Defendant Bakos concluded that it was more likely than not that Plaintiff had falsified his claims. As a result, he issued Plaintiff Misconduct B656750 for unsworn falsification to authorities and for lying to an employee. Plaintiff was found guilty of lying to an employee and sentenced to 90 days disciplinary custody.

Plaintiff has not shown that there is a genuine issue for trial because the record evidence does not support the first element of a retaliation claim – *i.e*, that Plaintiff's letter to Secretary Wetzel was constitutionally protected. *See* Schoonejongen v. Curtis-Wright Corp., 143 F.3d 120 (3d Cir. 1998) (a non-moving party may not defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit. If the record as a whole points in one direction, then the dispute is not genuine). For this reason, there is no need to examine the remaining two elements of his claim and Defendant Bakos is entitled to summary judgment. *See* Brightwell v. Lehman, 2007 WL 2479682, at *5-6 (W.D. Pa. Aug. 29, 2007) (granting summary judgment upon finding that plaintiff fabricated allegations about defendant in a letter he wrote to the

Pennsylvania Bureau of Professional and Occupational Affairs because letter containing false claims was not protected under the First Amendment).[9]

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Court grant the Motion for Summary Judgment (ECF No. 24) filed by Defendant Robert Bakos.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto.  Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response.  A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: July 8, 2016.

_____
Lisa Pupo Lenihan
United States Magistrate Judge


cc: Jason Grisby
KD-8463
SCI Forest
P.O. Box 945
Marienville, PA  16239

Counsel for Defendants
*Via CM/ECF Electronic Mail*

---

[9] Defendant has also moved for summary judgment on the issue of failure to exhaust administrative remedies; however, the undersigned finds that it not necessary to address this issue given that the case can be disposed of on the merits.

11